IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 10-144-2 |
| | ) | |
| LEWIS WHOOLERY, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OPINION**

CONTI, Chief District Judge.

On January 29, 2013, following a trial that spanned two weeks, a jury found

defendant Lewis Whoolery ("defendant") guilty of wire fraud conspiracy arising out of his

mortgage loan and appraisal operations. (ECF No. 152.)  On October 7, 2013, this court imposed

a sentence of ten years' imprisonment, to be followed by three years' supervised release. (ECF

No. 282.)  Defendant filed a motion for a new trial, pursuant to Federal Rule of Criminal

Procedure 33, based upon purportedly newly discovered evidence, on December 29, 2014. (ECF

No. 334-36.)  The government filed an opposition to that motion, and the matter is ripe for the

court's disposition. (ECF No. 337.)

**A.  Legal Standards**

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any

judgment and grant a new trial if the interest of justice so requires." FED. R. CRIM. P. 33(a).

When a motion for a new trial is based upon newly discovered evidence, the motion "must be

filed within 3 years after the verdict or finding of guilty." FED. R. CIV. P.  33(b)(1).  Courts are

directed to "exercise great caution in setting aside a verdict reached after fully-conducted

proceedings, and particularly so where 'the action has been tried before a jury." United States v. Kelly, 539 F.3d 172, 182 (3d Cir. 2008) (citing United States v. Kamel, 965 F.2d 484, 493 (7th Cir. 1992)).  A court need not hold an evidentiary hearing before ruling on a motion for new trial under Rule 33, especially where, as here, the court presided over the trial and is familiar with the record. United States v. Herman, 614 F.2d 369, 372 (3d Cir. 1980); see United States v. Jackson, 427 F.App'x 109, 113 (3d Cir. 2011).

A defendant seeking a new trial based upon newly discovered evidence must satisfy five requirements: (1) the evidence must be in fact, newly discovered, i.e., discovered since the trial; (2) facts must be alleged from which the court may infer diligence on the part of the movant; (3) the evidence relied on, must not be merely cumulative or impeaching; (4) the evidence must be material to the issues involved; and (5) the evidence must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal. United States v. Cimera, 459 F.3d 452, 458 (3d Cir. 2006) (citing United States v. Iannelli, 528 F.2d 1290, 1292 (3d Cir. 1976)).  Defendant "bears a 'heavy burden" to satisfy each of these requirements. United States v. Brown, 595 F.3d 498, 511 (3d Cir. 2010) (citing Cimera, 459 F.3d at 458).  "If just one of the requirements is not satisfied, a defendant's Rule 33 motion must fail." Kelly, 539 F.3d at 182 (citing United States v. Jasin, 280 F.3d 355, 365 (3d Cir. 2002)).

Generally, a new trial is not appropriate under Rule 33 when the new evidence is merely cumulative or impeaching, unless there are exceptional circumstances.  Exceptional circumstances exist where there is a strong exculpatory connection between the new evidence and the charge against defendant, or the new evidence seriously undermines evidence presented

at trial. United States v. Mensah, 434 F.App'x 123, 126 (3d Cir. 2011); United States v. Quiles, 618 F.3d 383, 392 (3d Cir. 2010); United States v. Saada, 212 F.3d 210, 216 (3d Cir. 2000). "The connection between the new evidence and the verdict must be so strong that it suggests the defendant was wrongly convicted." Mensah, 434 F.App'x at 126.

        Defendant asserts that this court should apply a three-part test, instead of the five-part test set forth above, because the newly discovered evidence is that a government witness committed perjury. (ECF No. 336 at 3.)  Under the three-part test advanced by defendant, a new trial is required when: (1) the testimony given by a material witness was false; (2) the jury might have reached a different conclusion; and (3) the party seeking a new trial was surprised by the testimony and unable to meet it, or did not know of the falsity until after trial. Id.  This test was enunciated by the Court of Appeals for the Seventh Circuit in Larrison v. United States, 24 F.2d 82 (7th Cir. 1928), and is, thus, referred to as the Larrison test.  The Court of Appeals for the Third Circuit has never adopted the Larrison test. United States v. Huggins, 392 F.App'x 50, 66 n.13 (3d Cir. 2010); see United States v. St. Vallier, No. 07–613, 2013 WL 5937006, at *2 n.3 (D.N.J. Oct. 31, 2013); United States v. Schneider, No. 10–29, 2013 WL 592148, at *4 (E.D. Pa. Feb. 15, 2013) (rejecting application of the Larrison test to recent motions for new trials).  The Court of Appeals for the Seventh Circuit, moreover, has expressly overruled Larrison. United States v. Mitrione, 357 F.3d 712, 718 (7th Cir. 2004), overruled with respect to sentencing in light of Booker, 542 U.S. 1097 (2005) (rejecting the "might have acquitted" test, and adopting the "reasonable probability" test which requires proof that the jury would probably have reached a different verdict).

Although this court would reach the same ultimate conclusion under either test, the five-part test, with the additional requirement, where appropriate, that exceptional circumstances be shown to exist, will be applied to defendant's motion.  Defendant presents two allegedly new pieces of evidence: (1) defendant's father's testimony that Kimberly Baldwin ("Baldwin"), defendant's sister and a government witness at his trial, admitted to him that she lied on the stand about certain facts in order to obtain a more lenient sentence; and (2) the fact that Baldwin pled guilty, in a separate criminal case before this court, to making false statements to the government in October 2013. (ECF No. 336 at 1.)  Neither category of evidence entitles defendant to a new trial.

### B.  The Purportedly "New" Evidence

#### 1.  Baldwin's Admission, to her Father, that she Lied

Defendant attaches to his motion a declaration signed by his father which states that Baldwin, his daughter and defendant's sister, admitted to him that she lied on the stand at defendant's trial in the hope of obtaining a more lenient sentence for her involvement in the mortgage fraud scheme for which both defendant and she were indicted. (ECF No. 334-2.) Defendant's father submits that Baldwin's trial testimony was factually inaccurate in two primary ways: (1) Baldwin testified that defendant wrote her checks in 2006 for fraudulent appraisals, but, in truth, defendant wrote those checks in order to buy out Baldwin's ownership interest in First Capital Home Equity; and (2) Baldwin testified that she did not speak to defendant between January 2001 and August 2003, but, in truth, she did not speak to defendant "for approximately 3 years" starting "shortly after" May 2003. (Id.)  Defendant's father declares that Baldwin admitted to him that she lied about these facts in order "to get the deal" with the

government that she hoped would result in a more lenient sentence being imposed on her for her role in the criminal mortgage fraud conspiracy. (Id.; ECF No. 209 at 152-53.)  According to defendant these two pieces of evidence are material because they provide alternative explanations for the documentary evidence admitted at trial that purportedly proved that he was paying Baldwin for fraudulent appraisals, and establish that defendant could not have been part of a conspiracy with Baldwin between January 2003 and November 2006, as charged in the superseding indictment, because they were not even speaking at that time. (ECF No. 336.)

As an initial matter, defendant's father's testimony that Baldwin admitted to him that she lied is merely impeaching.  Defendant is, therefore, required to establish, in addition to the other five factors, that exceptional circumstances exist.  Defendant fails to meet his burden of proof.  Defendant's father's proposed testimony that Baldwin is an admitted liar, in light of the other evidence presented at trial, has no strong exculpatory connection to the conspiracy charge against defendant, and does not seriously undermine the evidence admitted at trial or suggest that defendant was wrongly convicted. Mensah, 434 F.App'x at 126; Quiles, 618 F.3d at 392; Saada, 212 F.3d at 216.  The evidence of defendant's guilt admitted at trial, independent of Baldwin's testimony, was overwhelming.  Many co-conspirators, in addition to Baldwin, testified that defendant was involved in the mortgage fraud scheme.  Volumes of documentary evidence were admitted into the record showing defendant's involvement in the fraud of which he was convicted.  There can be no denying that Baldwin was a witness against defendant, but she was by no means the only, or even an especially crucial, witness against him.  Defendant's father's testimony that Baldwin admitted to him that she lied, assuming that defendant could gain admission of that testimony into evidence, can only be considered cumulative impeachment

evidence to a jury that was, and would again be, made aware that Baldwin pleaded guilty to participating in the same mortgage fraud conspiracy that defendant was being accused of, and was testifying against defendant in order to obtain a lenient sentence. (ECF No. 209 at 152-53.) Because defendant cannot prove that exceptional circumstances exist with respect to his father's new testimony that Baldwin admitted that she lied at trial, defendant is not entitled to a new trial. Even if the court were to apply the Larrison test, defendant would still not be entitled to relief. For the same reasons that exceptional circumstances do not exist, defendant would be unable to prove that a jury might reach a different verdict if it knew that Baldwin admitted to lying on the stand. Larrison, 24 F.2d at 84.

        To the extent that defendant contends that this court should consider the substance of his father's testimony on matters such as why defendant was making payments to Baldwin, or during what years his children were not speaking, this evidence is not newly discovered.  For that reason alone defendant cannot meet his burden to prove that a new trial is warranted on that basis.  Just as defendant's father readily recognized that Baldwin lied about these facts when he reviewed her trial testimony, so too would defendant, through the exercise of reasonable diligence, have recognized, during trial, that the basic factual underpinnings of Baldwin's trial testimony were false.  Defendant cannot credibly maintain that, during his trial, he was unaware of when he bought out Baldwin's ownership interest in their mortgage company, when he was paying off that buy-out, or when he stopped talking to his sister, or that he was unaware that such matters would be crucial to his defense against an indictment that charged him with participating in a mortgage fraud conspiracy with his sister, and others.  Although defendant alleges that he was "surprised" that his sister lied at his trial, defendant could not have been "surprised" that

these factual matters would be key to his defense.  The time for defendant to have attacked the substance of Baldwin's testimony on these issues, and her veracity, were at trial.  Indeed, defendant did just that at trial, impeaching Baldwin on these factual discrepancies, and others. (ECF No. 210 at, e.g., 7-8, 17-19, 21-22, 24-26, 30-32, 47-49.)  Defendant cannot establish that this evidence is "newly discovered," or that he acted diligently during trial with respect to it.

Although it follows that defendant is not entitled to a new trial because he cannot satisfy the first two factors of the five-part test, the court notes that the evidence is also of questionable materiality.  Even according to defendant's father's own version of the facts, Baldwin and defendant were speaking for, approximately, the first and last five months of the period of the alleged conspiracy. (ECF No. 334-2 (not speaking shortly after May 2003 and sometime in 2006); ECF No. 46 (conspiracy alleged between January 2003 and November 2006).)  Finally, the evidence is not of such a nature that it probably would have resulted in an acquittal.  As stated above, even if Baldwin were proven to be an admitted liar, or if defendant's father were to offer testimony to contradict Baldwin's testimony on certain factual matters, the other evidence at trial establishing defendant's guilt was overwhelming.  In the face of the many co-conspirators' testimony, and the volumes of documentary evidence that implicated defendant in the conspiracy of which he was convicted at trial, this purportedly "new" evidence about Baldwin's lies is substantively inconsequential and merely cumulative impeachment evidence.

For the same reasons set forth above, even if this court were to apply the Larrison test to this proffered testimony, defendant would be unable to establish surprise and that the jury might have reached a different result.

## 2.  **Baldwin's Second Criminal Conviction**

Defendant argues that he is entitled to a new trial because Baldwin was convicted, in a separate criminal case, of making false statements to the government. (ECF No. 336 at 1.) The false statements that formed the basis of Baldwin's second criminal conviction were made more than seven months after defendant's trial, were not related to Baldwin's trial testimony, or to Baldwin's activities in the mortgage or appraisal industries.  Baldwin's subsequent conviction for making false statements to the government does not warrant a new trial.  Although this evidence is certainly new, it is merely cumulative impeachment evidence, and for that reason defendant cannot satisfy the five-part test set forth above or prove that exceptional circumstances exist.

At the time of defendant's trial, Baldwin had pleaded guilty to the wire fraud charges stemming from her participation in the mortgage fraud conspiracy with defendant, and others. (ECF No. 209 at 152-53.)  She admitted to fabricating information and data for housing appraisals, and to using other peoples' names and appraisal licenses to complete the paperwork. (Id. at 152-87.)  These facts and this testimony provided defendant with ample fodder to attack Baldwin's character.  Baldwin's second, subsequent, federal criminal conviction might, from defendant's viewpoint, be "even better" evidence that Baldwin is a dishonest person, but it is no more than cumulative impeachment evidence.  Defendant cannot demonstrate that exceptional circumstances warrant a new trial on this basis.  Baldwin's second conviction has no strong exculpatory connection to the charges against defendant and does not undermine the evidence presented at trial.  As set forth above, these false statements were unrelated to the mortgage fraud conspiracy charged in the superseding indictment, or to Baldwin's work in the mortgage

industry.  Defendant cannot show that he would not have been convicted if the jury had been aware that Baldwin was twice-convicted of federal crimes of dishonesty, instead of once-convicted.

Under these circumstances, defendant is not entitled to a new trial on the basis of Baldwin's second criminal conviction.  The same result would apply even if the court were to apply the Larrison test because Baldwin could not have testified about the circumstances leading to her second conviction at defendant's trial because the statements had not yet been made, and, even if they had been, they were substantively unrelated to any issue raised during defendant's trial.  Defendant, thus, cannot establish that Baldwin gave any false testimony against him with respect to her second criminal conviction, which is the first requirement of the Larrison test.

### C.  Conclusion

For the reasons set forth above, defendant is not entitled to a new trial.  An appropriate order will be entered contemporaneously with this opinion.

BY THE COURT:

Date:   January 23, 2015                              /s/ *Joy Flowers Conti*
                                                      Joy Flowers Conti
                                                      Chief United States District Judge